In the Matter of the WELFARE OF
K. P. H.

Nos. 49453, 49519.

Supreme Court of Minnesota.

Jan. 11, 1980.

Rehearing Denied Feb. 29, 1980.

William R. Kennedy, Chief County Public Defender, Franklin J. Knoll, Gerard W. Snell, Cort C. Holten and Patrick J. Sullivan, Asst. Public Defenders, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief App. Div., David W. Larson, Thomas A. Weist, and Janeen E. Rosas, Asst. County Attys., Minneapolis, for respondent.

Heard before YETKA, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

This is a juvenile's appeal from an order of the Hennepin County Juvenile Court granting the state's motion for certification and reference for prosecution of the juvenile as an adult. The state appeals from the juvenile court's suppression of a confession during the probable cause/reference hearing. Each party has moved to dismiss the appeal of the other. We deny the state's motion to dismiss the juvenile's appeal, and on this record reverse the juvenile court's order certifying the juvenile as an adult.

In January 1978, a man was shot to death while sleeping in his car in Maple Plain, Minnesota. K.P.H., age 17, was arrested in May 1978, and charged with aiding and abetting two other juveniles to commit murder in the first degree. On motion of the state for an order certifying the juvenile as an adult, the Hennepin County Juvenile Court held a hearing concerning probable cause and certification as an adult on July 31, October 4–6, and October 10, 1978. The judge heard extensive testimony regarding the nature of the offense, the extent of the juvenile's participation in it, and his amenability to treatment, including testimony by psychologists, directors of several juvenile treatment programs, K.P.H.'s mother, and K.P.H. himself. The court refused to consider at the hearing the second of two statements K.P.H. made to the police after his arrest. The juvenile court's order of October 10, 1978, granted the state's motion for adult prosecution. On October 26, 1978, on motions by the juvenile for either an order conforming with the court's findings or for an indefinite stay of the reference order of October 10, the juvenile court stayed the adult certification on condition that the juvenile be accepted and successfully participate in the Nexus Community Corrections Program and on certain other conditions.

Each party argues initially that the other's appeal is from a nonappealable order and must, therefore be dismissed. The state maintains that the juvenile court's order of certification is nonappealable because the stay rendered it interlocutory. The juvenile argues that the court's refusal to consider the juvenile's confession at the reference hearing is not an appealable order because it is not "final" and the state is not an "aggrieved party" since it prevailed below, that is, the state's motion for certification as an adult was granted.

Minn.Stat. § 260.291, subd. 1, provides: "An appeal may be taken by the aggrieved person from a final order affecting a substantial right of the aggrieved person." In *Weinzierl v. Lien,* 296 Minn. 539, 209 N.W.2d 424 (1973), the court held that an order is not appealable unless in effect it finally determines the action or finally determines some positive legal right of the appellant to the action. This court has held that reference decisions are final orders and may be appealed from by either the state or the juvenile. *In re Welfare of I.Q.S.,* 309 Minn. 78, 244 N.W.2d 30 (1976).

The fact that the order was stayed does not make it an interlocutory order. If juveniles are not allowed to appeal certification orders that have been stayed, they may never be allowed to appeal. The court's order in this case was stayed on only one condition—completion of treatment. Should there be a hearing on the revocation of the stay, the only issue that could be argued is whether or not the juvenile com-

pleted treatment. The propriety of the underlying certification would not be retried at that revocation hearing. The legislature could not have intended Minn.Stat. § 260.-291 to allow a juvenile's liberty to be restricted by the juvenile court without an adjudication of guilt and without a right to appeal to the Supreme Court.

The state's reliance on *In re Welfare of K.T.N.,* 312 Minn. 576, 251 N.W.2d 636 (1977), is misplaced. In that case the court held that mandamus would not lie to compel the juvenile court to withdraw its order staying certification, because under the facts of that case the court's reference order was not a final order. We did not hold in *K.T.N.* that every certification order that is stayed is an interlocutory order. In *K.T.N.,* the judge's order allegedly granting reference specifically continued the matter of certification for 6 months, at which time another hearing would be held. Thus, this court felt that although the juvenile court in *K.T.N.* purported to grant the state's motion for reference, actually it deferred the final reference decision for 6 months. No writ of mandamus would lie until the reference decision became final, after the 6-month period.

The juvenile court's order in the instant case, however, was a final order. The stay was made 6 days after the original order for reference was made, and only after motion of the parties. There was no explicit language in the order continuing the decision until a later date. Therefore, it cannot be said in this case that the judge deferred his certification decision or that his October 10 order was not final and appealable.

■ We would ordinarily reach a different result with respect to the state's appeal from the juvenile court's suppression of K.P.H.'s second statement to the police because the evidentiary ruling is not a final order and because the state, having prevailed on the motion for reference, cannot be considered an aggrieved party within the meaning of Minn.Stat. § 260.291, subd. 1. We have concluded, however, that the second statement of K.P.H. should not have been considered by the court on the issue of dangerousness. *In re Welfare of W.J.R.,* 264 N.W.2d 391 (Minn.1978). We find the statement relevant, material and not constitutionally invalid. Consequently, it should be considered, on remand, in connection with the issue of dangerousness to the public.

The remaining issue to be decided is whether the juvenile court's decision to certify K.P.H. as an adult was proper in light of its findings and the relevant statutory authority.

■ Minn.Stat. § 260.125, subd. 2, provides in pertinent part: "The juvenile court may order a reference only if * * * (d) [t]he court finds that the child is not suitable to treatment or that the public safety is not served under the provisions of laws relating to juvenile courts." Thus, if the court finds either nonamenability to treatment or a threat to public safety it may refer the juvenile for adult prosecution. *State v. Hogan,* 297 Minn. 430, 212 N.W.2d 664 (1973). The juvenile court is vested with broad discretion in determining whether either of the statutory criteria exists upon which to base its reference decision, *In re Welfare of J.B.M.,* 263 N.W.2d 74 (Minn. 1978), and its findings will not be disturbed on appeal unless they are "clearly erroneous." *In re Welfare of I.Q.S.,* 309 Minn. 78, 244 N.W.2d 230 (1976). The juvenile in this case argues that the juvenile court's findings require as a matter of law that the juvenile remain in the juvenile justice system. The state argues that the court's decision is not clearly erroneous and so must be sustained. Neither party attacks the court's findings of fact.

The court, in its order of October 10, 1978, found the juvenile "clearly amenable to insecure [sic] treatment before he is twenty-one," that he does not require security during such treatment, and that facilities exist within the juvenile system which will provide treatment for him with adequate protection. The court went on to find that the juvenile was "not aware that the killing was contemplated, nor would he have condoned it, nor would he have used the gun himself; it is doubtful whether he would intentionally hurt another human by any means * * *." The court found

further, however, that the juvenile did "willingly go along on a crime spree knowing a gun was available, he took part in a discussion of arguing against it, he drove the 'getaway car,' and made no attempts to report the killing to his mother or the authorities." Stating that there is no case law in Minnesota regarding whether an accomplice to a vicious act, who is himself nonviolent, should be deemed as dangerous as the violent actor, the court found that the juvenile must be "deemed as dangerous as the actual killer" and must be certified to the adult system, because the state legislature has set the same penalty for accomplices as for actors, setting a state policy that a person unwilling to kill but willing to participate is considered as dangerous as the actual killer. Thus, although the court clearly found that the juvenile was amenable to treatment, its findings regarding the juvenile's dangerousness are less clear. It found the juvenile to be personally nonviolent, but, as a matter of law, deemed him dangerous because he aided in a murder.

It is true that the facts of the crime must be considered in determining whether prosecution as an adult is proper. *State v. Duncan,* 312 Minn. 17, 250 N.W.2d 189 (1977). Indeed, several factors must be considered in determining if the child is a threat to public safety:

(1) The seriousness of the offense in terms of community protection; (2) the circumstances surrounding the offense; (3) whether the offense was committed in an aggressive, violent, premeditated, or willful manner; (4) whether the offense was directed against persons or property; (5) the reasonably foreseeable consequences of the act; and (6) the absence of adequate protective and security facilities available to the juvenile treatment system.

*State v. Hogan,* 297 Minn. 430, 438, 212 N.W.2d 664, 669–70 (1973).

As this court stated recently in *In re Welfare of Dahl,* 278 N.W.2d 316 (Minn. 1979), however, application of the *Hogan* factors was not intended to result in adult referral solely because of the alleged offense. The existing statutory framework, we there recognized, does not authorize re-

ferral based on the specific crime charged. *Id.* at 321. In order for the statutory reference standard to be satisfied, the record must contain direct evidence of dangerousness in addition to the inferences which may be drawn from the commission of the crime itself. *Ibid.* Because the juvenile court in the instant case found neither of the statutory criteria for certification and apparently referred the juvenile for prosecution as an adult solely because of the nature of his offense, *Dahl* mandates reversal.

We express our disapproval of the juvenile court's imposition of a stay of certification. Based on the juvenile court's findings regarding amenability to treatment and threat to public safety, the state's motion for certification of the juvenile as an adult must either be granted or denied. Either the juvenile can be treated in the juvenile system consistent with the public safety or he cannot. If he can, reference as an adult is improper. If he cannot, he may be certified. In neither case, however, is a stay of certification appropriate.

Reversed and remanded.