### In the Matter of the WELFARE OF Kelly Patrick HARTUNG.

Nos. 51950, 51958.

Supreme Court of Minnesota.

April 1, 1981.

William R. Kennedy, Hennepin County Public Defender, Franklin J. Knoll, Cort C. Holten, Asst. Public Defenders, Minneapolis, for appellant.

Thomas L. Johnson, County Atty., Vernon Bergstrom, Michael McGlennen, Thomas A. Weist, Asst. County Attys., Minneapolis, for respondent.

SHERAN, Chief Justice.

This is an appeal by K.P.H. from an order of the Juvenile Division of the Hennepin County District Court referring him for prosecution as an adult for his alleged role in the January 1978 shooting death of a man sleeping in a car in Maple Plain. The appeal has been consolidated for decision with a petition for a writ of mandamus compelling the district court to order the prosecutor to present certain allegedly exculpatory evidence to the grand jury when and if the prosecutor presents the case to the grand jury for consideration. We affirm the reference order and deny the petition for the writ of mandamus.

This case was before this court once before on an appeal from an earlier order of the juvenile court which certified K.P.H. for adult prosecution. At K.P.H.'s request, the juvenile court stayed the order and placed K.P.H. in a treatment program pending the appeal. K.P.H. expressly waived any speedy trial claim and any claim that the stayed order and his placement in the treatment program constituted a disposition for double jeopardy purposes. This court ruled, among other things, that the reference order was improper because the juvenile court had based its finding of dangerousness solely on the nature of the offense and inferences drawn from the commission of the offense. We ruled that on remand the juvenile court should consider on the issue of dangerousness a statement to the police which the juvenile court had erroneously refused to consider. *In re Welfare of K.P.H.*, 289 N.W.2d 722 (Minn.1980).

On remand the juvenile court conducted a supplementary reference hearing limited to the issue of K.P.H.'s present dangerousness, the state conceding that the amenability of K.P.H. to treatment was not an issue. After hearing all the evidence the juvenile court found that appellant was dangerous and again referred him for adult prosecution.

We have stayed prosecution of appellant as an adult pending this expedited appeal. We have agreed to consider, at the same time that we consider the appeal, appellant's petition for a writ of mandamus compelling the district court to order the prosecutor to present certain exculpatory evidence to the grand jury when and if the prosecutor takes the case before the grand jury for consideration.

The main issues for us to decide are (1) whether the juvenile court's original placement of appellant in a residential treatment program as part of his stay of the first reference order constituted a de facto adjudication and disposition causing jeopardy to attach, thereby barring subsequent prosecution of appellant as an adult, (2) whether there was sufficient evidence of dangerousness, and (3) whether we should order the prosecutor to present the allegedly exculpatory evidence to the grand jury when and if the prosecutor takes the case before the grand jury.

■ 1. K.P.H.'s first contention is that the juvenile court's original placement of him in a residential treatment program as part of the stay of the original reference order constituted an adjudication and disposition causing jeopardy to attach.

If the juvenile court were to hear evidence in an adjudicatory hearing, then any later attempt to refer the juvenile for adult prosecution would be barred by the double jeopardy clause. *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). There might also be a double jeopardy problem if the juvenile court certified a juvenile but then, on its own and without any waiver by the juvenile, stayed that order and ordered the juvenile to participate in a formal treatment program. However, here the juvenile court stayed the reference order and placed K.P.H. in the treatment program at K.P.H.'s request and the court agreed to do this only after K.P.H. expressly waived any claim that the stayed order and his placement in the treatment program constituted a disposition for double jeopardy purposes. We hold that this waiver was valid. *White v. State*, 309 Minn. 476, 248 N.W.2d 281 (1976).

2. The second main issue raised by K.P.H. is the sufficiency of the evidence of dangerousness.

Before we decide this, we must decide the preliminary issue whether the juvenile court properly admitted and relied upon new evidence bearing on dangerousness, particularly, evidence concerning K.P. H.'s conduct after the first reference hearing while his case was on appeal (K.P.H. left the treatment program and committed an act of unauthorized use, which resulted in a felony conviction and a term in the workhouse). K.P.H.'s contention is that the juvenile court should not have relied upon this evidence but should have conducted a so-called "reconstructed" reference hearing, with the only new evidence admitted being evidence which was erroneously excluded at the first hearing.

We hold that the juvenile court properly refused to limit the evidence to that which was admitted or offered at the first reference hearing.

K.P.H.'s argument that the juvenile court should have so limited the evidence is based primarily on *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), in which the United States Supreme Court remanded for a reconstructed reference hearing after it determined that the procedures used at the first reference hearing violated due process. In our opinion, neither the holding nor the logic of *Kent* requires a reconstructed hearing in this case. First of all, the reference order in *Kent* violated the constitution, whereas the error in our case was one of state law. Second, *Kent* did not hold that a reconstructed reference hearing is required in all cases in which a determination is made that a reference hearing violated due process. By the time the *Kent* case was decided, Kent had passed age 21 and the juvenile court no longer could have jurisdiction over him. In remanding for a reconstructed hearing, the court stated that "ordinarily" it would remand for "a new determination of waiver [reference]" but that that remedy was unavailable in the case before it. The remedies available were vacation of Kent's adult conviction and dismissal of the indictment or a remand for a new hearing to reconstruct whether waiver would have been appropriate if the proper procedures had been followed originally.

The remedy of a reconstructed reference hearing should be used only when it is absolutely necessary, because, as stated in the Comment to A.B.A. Juvenile Justice Standards, Transfer Between Courts § 2.4A (Tentative Draft, 1977), "Reconstructed waiver hearings ask judges to do what may be impossible and what certainly is unwise." The reason the remedy is unwise in most cases is that the juvenile court should not be expected to ignore present conditions in redetermining reference. A reference hearing is a dispositional type hearing which is forward looking: that is, the purpose of it is to determine on the basis of the offense charged and the present conditions "whether, *upon an adjudication of guilt*, a juvenile can be retained within the juvenile justice system with benefit to himself and without danger to the public." *In re Welfare of T.D.S.*, 289 N.W.2d 137, 141 (Minn. 1980). *See also In re Welfare of S.R.J.*, 293 N.W.2d 32 (Minn.1980).

Having concluded that the juvenile court properly admitted the evidence in question—which also included new defense evidence bearing on reference—we proceed to decide the sufficiency of the evidence for the reference order. Under the applicable statute, Minn.Stat. § 260.125, subd. 2(d) (1978), the juvenile court could order reference in this case only if it determined that K.P.H. was not suitable for treatment in the juvenile justice system or that the public safety would be endangered by keeping him in the system. As we have held in numerous cases, including *In re Welfare of K.P.H.*, 289 N.W.2d 722 (Minn.1980), the juvenile court's findings will not be disturbed on appeal unless "clearly erroneous," and the juvenile court has broad discretion in determining whether either of the statutory prerequisites to reference exists.

K.P.H. contends that although the issue of amenability to treatment was not before

the juvenile court, the court in effect none-theless based its order on a determination that K.P.H. was not amenable to treatment. This, however, is not true. The court deter-mined not that K.P.H. was unamenable to treatment, but that he could not be treated in the juvenile court system consistent with the public safety because treatment might be required long after the juvenile court's jurisdiction expired and even after the dis-trict court's authority to revoke K.P.H.'s adult parole for the unauthorized use con-viction expired in September 1982. Be-cause our examination of the record satis-fies us that the court's findings were not clearly erroneous and that the district court did not clearly abuse its discretion in order-ing reference, we affirm the reference or-der.

■ 3. The only remaining issue is whether we should grant the petition for a writ of mandamus compelling the district court to order the prosecutor to present the alleged exculpatory evidence to the grand jury.

Recently, in *State v. Wollan*, 303 N.W.2d 253 (Minn.1980), we reversed a district court order which dismissed an indictment be-cause the prosecutor had refused to grant a grand juror's request for evidence of the defendant's sanity or insanity. Our opinion made it clear that the district court improp-erly ruled that the prosecutor should have answered that request, but we stated that "As a general rule, a prosecutor should hon-or a grand jury request for additional [ad-missible] evidence.

The issue in this case—whether the prose-cutor is under any obligation to present admissible exculpatory evidence to the grand jury absent a request—was not spe-cifically addressed in *Wollan*, and we see no need to address it here, because (a) the prosecutor may decide not to present the case to the grand jury and (b) the evidence in question does not appear to be admissible evidence. Without getting into any details on this latter point, we simply refer the parties to Minn.R.Evid. 804(b)(3) and 4 J. Weinstein and M. Berger, Weinstein's Evi-dence—United States Rules, §§ 804(b)(3) [01]–804(b)(3)[03] (1978).

Reference order affirmed; petition for writ of mandamus denied.